UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Case No. 17-27-CHB-CJS-1 |
| Plaintiff, | ) | Civil Case No. 19-188-CHB-CJS |
| | ) | |
| v. | ) | |
| | ) | **ORDER and** |
| DUSTIN JOLLY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Dustin Jolly, *pro se*, moves to vacate, set aside, or correct his sentence under 28 U.S.C.
§ 2255. (R. 114). He also moves to seal certain portions of the record concerning this proceeding.
(R. 122; 123). Pursuant to local practice, this matter has been referred to the undersigned for
consideration and preparation of a Report and Recommendation under 28 U.S.C. § 636(b). *See
also* Rule 10 of the Rules Governing § 2255 Proceedings ("A magistrate judge may perform the
duties of a district judge under these rules, as authorized by 28 U.S.C. § 636."). For the reasons
given below, it will be recommended that Jolly's § 2255 motion **be denied**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

For his part in a methamphetamine trafficking conspiracy, Jolly pled guilty to conspiring
to knowingly and intentionally distribute 50 grams or more of a mixture or substance containing a
detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21
U.S.C. §§ 841(a)(l) and 846, and possession of a firearm in furtherance of a drug trafficking crime,
in violation of 18 U.S.C. § 924(c)(1)(A). (R. 26; R. 73; R. 91). While Jolly would typically face
a statutory mandatory-minimum sentence of five years in prison, the mandatory minimum on the
conspiracy-to-distribute count was enhanced to ten years because he committed this crime "after

a prior conviction for a felony drug offense ha[d] become final." 21 U.S.C. § 841(b)(1)(B) (2010); *see generally United States v. Lockett*, 359 F. App'x 598, 602 (6th Cir. 2009) (explaining statutory enhancement for "felony drug offense" under § 841(b)(1)(B)); (*see* R. 65). Jolly was sentenced to 120 months in prison on the conspiracy-to-distribute count and a consecutive 60-month prison term on the firearm-possession count for a total term of 180 months in prison. (R. 91; R. 112, Page ID 340). Jolly did not appeal.

Jolly later filed the pending Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, raising three claims: (1) the Government failed to comply with 21 U.S.C. § 851(a)(1)'s notice requirements for enhancing a sentence; (2) his trial counsel was ineffective regarding his enhanced sentence; and (3) his trial counsel was ineffective for failing to challenge the alleged conflict of interest of Jolly's state-court counsel. (R. 114). The Government responds that Jolly's claims are waived, statutorily barred, and meritless. (R. 127). Jolly filed a reply in support of his § 2255 motion. (R. 133).

## II.     ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may seek relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a federal prisoner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional error, a federal prisoner "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so

egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).  In sum, a federal prisoner must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).  A federal prisoner must prove his allegations by a preponderance of the evidence.  *Pough*, 442 F.3d at 964.

### A.   Jolly's Direct Challenge to his Sentencing Enhancement is Waived, Procedurally Defaulted, and Meritless

Jolly's first claim challenges the Government's compliance with 21 U.S.C. § 851(a)(1), which provides, in part, as follows:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

Specifically, Jolly contends that while the Government filed a notice of his prior conviction, it did not comply with § 851(a)(1) because the noticed conviction did not actually exist. He argues that the presiding District Judge thus lacked jurisdiction to enhance his sentence and that his Fifth Amendment right to due process was violated.  (R. 114, Page ID 367).  The Court will address the merits of these arguments below; however, a merits review is not even required because this claim is waived and procedurally defaulted.[1]

### 1.   This claim is waived

---

[1] Additionally, in circumstances similar to these, the Sixth Circuit has recently stated that a mandatory-minimum sentence that was wrongly enhanced, but still under the maximum sentence permitted without the enhancement, "may or may not be cognizable in a properly filed first motion under § 2255." *Hueso v. Barnhart*, 948 F.3d 324, 332 (6th Cir. 2020).

The Government argues that Jolly "has waived his challenge by failing to raise it before imposition of his sentence." (R. 127, Page ID 488). This argument stems from § 851(c)(2), which provides as follows: "Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge." Here, the presiding District Judge explained this provision to Jolly at sentencing. (*See* R. 112, Page ID 319 ("But if you do not challenge the existence of that prior conviction before I sentence you, you cannot challenge the existence of that previous conviction on appeal or in a post conviction proceeding.")). Jolly acknowledged that he understood, but he raised no challenge to the prior conviction before his enhancement was imposed. (*Id.* ("THE COURT: You understand that, correct? THE DEFENDANT: Yes, ma'am. THE COURT: And you have no objection to that? THE DEFENDANT: No, ma'am.")). Accordingly, under the plain terms of § 851(c)(2), he has waived the right to now collaterally challenge his prior conviction. *Gonzales v. United States*, No. 2:06-CR-11, 2010 WL 4025879, at *7 (E.D. Tenn. Oct. 13, 2010) (applying § 851(c)(2) in § 2255 case to conclude that federal prisoner "waived any challenge" to conviction used to enhance sentence). Jolly, however, objects to this conclusion.

> First and foremost, in the plea agreement with the Government, Jolly never waived his Fifth Amendment Due Process rights to challenge a sentence based on materially false and inaccurate information. (See Fair v. United States, 157 F.3d 427, 430 (6th Cir. 1998) ("[A]n egregious error violative of due process" may be raised in a § 2255).

(R. 133, Page ID 533). But this argument fails to convince for two reasons. First, Jolly misconstrues the Government's position. The Government is not arguing that Jolly waived this claim via a collateral-waiver provision in his plea agreement. Rather, the Government argues that

he waived this claim under § 851(c)(2).[2] Moreover, and as noted, § 851(c)(2) has been applied to bar collateral challenges to sentencing enhancements in § 2255 proceedings. *Gonzales*, 2010 WL 4025879, at *7.

Second, just because a due process claim may be presented in a § 2255 motion does not mean that such a claim cannot be waived. Jolly cites no authority holding that collaterally alleged due-process violations are exempt from waiver under § 851(c)(2). Sixth Circuit authority has interpreted a similar waiver provision—§ 851(e)'s prohibition on challenges to the validity of any prior conviction . . . which occurred more than five years before the date of the information alleging such prior conviction[3]—as valid, noting that "the Supreme Court has made it clear that Congress could choose to eliminate *all collateral attacks* on prior convictions with regard to sentence enhancement, save for the limited circumstance in which the prior conviction was obtained in violation of the right to have counsel appointed." *United States v. Reed*, 141 F.3d 644, 652 (6th Cir. 1998) (emphasis added); *see United States v. Cavazos*, 950 F.3d 329, 333 (6th Cir. 2020) ("Thus, § 851(e) prevents Cavazos from challenging the constitutionality of his prior conviction regarding his enhanced sentence. Cavazos argues that he cannot waive his constitutional challenge. But that is not true."). Jolly has not posed this claim in terms of counsel's ineffectiveness, nor argued, e.g., that counsel's alleged ineffectiveness constitutes "good cause" under § 851(c)(2) to excuse his "failure to make a timely challenge." Accordingly, this claim is waived.[4]

---

[2] Although the Court does note that Jolly's plea agreement contains a collateral-waiver provision that "waive[d] the right to attack collaterally the guilty plea, conviction, and sentence" except for claims alleging ineffective assistance of counsel. (R. 73, Page ID 192).

[3] The Government also argues that Jolly's claim is barred under § 851(e). (R. 127, Page ID 489). It is unnecessary to address this argument because there are ample other reasons to reject Jolly's claim.

[4] Jolly's next claim explicitly alleges that counsel was ineffective regarding his enhanced sentence. To the extent that Jolly would later wish to incorporate such argument within his first claim, it would fail for the reasons given *infra*.

## 2.      This claim is procedurally defaulted

Alternatively, if Jolly's claim were not waived, it would be procedurally defaulted because he failed to raise it on direct appeal. *See Huff v. United States*, 734 F.3d 600, 605-06 (6th Cir. 2013) ("Generally, when a defendant fails to raise an issue at sentencing or on direct appeal, that issue is waived."). "[C]laims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Here, Jolly has not argued these circumstances, nor are such circumstances apparent from the record.

However, anticipating the procedural default, Jolly does argue in his § 2255 motion that "jurisdictional defects, by contrast, cannot be procedurally defaulted." (R. 114, Page ID 372). But the Eleventh Circuit case he relies on to argue that his claim is jurisdictional in nature, *Harris v. United States*, 149 F.3d 1304 (11th Cir. 1998), has been abrogated. *See United States v. DiFalco*, 837 F.3d 1207, 1216 (11th Cir. 2016) ("We hold today that our decisions that § 851 imposes a jurisdictional limit on a district court's authority have been undermined to the point of abrogation by subsequent decisions of the Supreme Court."). More importantly, authority from the Sixth Circuit concluding that § 851(a)'s requirements are not jurisdiction is fatal to Jolly's argument. *See United States v. Pritchett*, 496 F.3d 537, 546 (6th Cir. 2007) ("This Circuit now joins the majority of its sister circuits in holding that the section 851(a) requirements are not jurisdictional."). Accordingly, Jolly has failed to excuse his procedural default of this claim.[5] *See*

---

[5] Should Jolly later argue that the Government's silence concerning his procedural default prevents this Court from raising the issue *sua sponte*, he would be wrong. *See Wells v. Warden, Belmont Corr. Inst.*, No. 18-3125, 2018 WL 3869276, at *2 (6th Cir. Apr. 30, 2018). ("[T]he district court did not err by

*Holland v. United States*, No. 1:09-CR-186-CLC-SKL, 2016 WL 3951145, at *3 (E.D. Tenn. July 20, 2016) ("To the extent Petitioner suggests the Government engaged in misconduct by filing the § 851 notice on the same day as the plea agreement and rearraignment, such a claim is procedurally defaulted because he could have raised it on appeal, but did not.").

### 3.  This claim is meritless

Alternatively, if Jolly's claim were not waived and procedurally defaulted, it still fails on the merits.  Here, the Government's § 851 notice provided as follow:

> Pursuant to 21 U.S.C. § 851, the United States gives notice that, if Dustin Jolly is convicted of Count 1 charged in the Indictment, he shall be subject to an enhanced statutory punishment pursuant to 21 U.S.C. § 841(b)(1)(B) because he has a prior final felony drug conviction for Complicity to Traffic in Controlled Substance (Cocaine), 1st offense in Jefferson County, Kentucky on May 22, 2009 (Case Number 07-CR-03431).  Jolly was sentenced to 5 years prison (suspended with 5 years' probation).

(R. 65).  Jolly says that this trafficking "conviction . . . never existed."  (R. 114, Page ID 374).  Although he concedes that he was originally charged with trafficking, he asserts that his charge was later amended down to possession of cocaine.  (*Id.* at 389).  In support, he has attached a Judgment of Conviction and Sentence from the Jefferson Circuit Court, which states: "**COUNT 1: TRAFFICKING IN CONTROLLED SUBSTANCE I (COCAINE) - AMENDED TO ILLEGAL POSSESSION OF A CONTROLLED SUBSTANCE I (COCAINE) - two (2) years**."[6]  (*Id.* at 441).  Jolly argues that the incorrect description of his conviction in the

---

considering the issue of procedural default sua sponte because it provided Wells the opportunity to address the issue in his objections to the magistrate judge's report and recommendation.").  This Report and Recommendation provides notice to Jolly that the claim is procedurally defaulted.  The period for filing objections, specified at the end of this Report and Recommendation, gives him the opportunity to present his position on the issue.

[6] The Government has not challenged this Judgment, and the Court will assume, *arguendo*, that it correctly reflects Jolly's actual conviction.  (*See* R. 127, Page ID 490).

Government's § 851 notice gives rise to two errors:  (1) "The District Court, relying on the inaccurate information within the 'Notice', sentenced Petitioner to [an] enhanced sentence, to which the Court lacked jurisdiction to impose"; and (2) "In violating the strict procedural requirements and mandatory language of Section 851(a), by filing a 'Notice' containing factual inaccuracies within, the Government violated Petitioner's Fifth Amendment Due Process rights." (*Id.* at 370).  Jolly is wrong on both fronts.

Jolly's jurisdictional challenge is simply misplaced because, as already discussed, "851(a) requirements are not jurisdictional."  *Pritchett*, 496 F.3d at 546.  Jolly has since appeared to backtrack (at least somewhat) from this argument in his reply, stating as follows:

> Jolly, proceeding pro se, was not arguing the Court lacked per se "subject matter jurisdiction," but that the Court lacked "statutory authority" jurisdiction.  The Court definitely had subject matter jurisdiction to decide as to whether or not it would impose the § 851 enhancement.  The better question before this Court is:  Whether the Court had jurisdiction under the § 851 statute itself in light of the fact the Government failed to follow the mandatory prerequisites of § 851(a) by filing a materially inaccurate § 851 Notice.

(R. 133, Page ID 538).  Jolly fails to explain what "statutory authority jurisdiction" is, but this appears to be a recycled attempt to argue that a failure to comply with § 851(a) means the Court does not have subject matter jurisdiction under the statute to enhance a sentence.  This is simply wrong.  *Pritchett*, 496 F.3d at 547 ("[N]oncompliance does not divest the district court of subject matter jurisdiction.").  However, while not jurisdictional, "the requirements delineated in section 851(a)(1) are mandatory and . . . a district court cannot enhance a defendant's sentence based on a prior conviction unless the government satisfies them."  *Id.* at 548.  If this is what Jolly means to argue, discussion of his next claim resolves this argument.

Jolly is correct to the extent that he suggests that § 851's requirements are mandatory before a district court can enhance a sentence and that the requirements are grounded in due process

concerns.  *See Pritchett*, 496 F.3d at 548 ("However, it is also well-settled precedent in this Circuit

and its sister circuits that section 851 'was designed to satisfy the requirements of due process and

provide the defendant with reasonable notice and an opportunity to be heard regarding the

possibility of an enhanced sentence for recidivism.'") (quoting *United States v. King*, 127 F.3d

483, 489 (6th Cir. 1997)).  But he is incorrect in arguing that the Government failed to comply

with § 851's requirements and that his due process rights were violated by the Government's

erroneous description of his state court conviction.  This is because not all errors render a § 851

notice invalid.  *See United States v. Brown*, 677 F. App'x 247, 251 (6th Cir. 2017) ("The point of

§ 851 is notice and, despite the government's initial errors, Brown received notice that the

government would rely on his 1983 conviction. The government adequately complied with 21

U.S.C. § 851.").  "[U]ltimately, a § 851 information is sufficient if it provides reasonable notice

and an opportunity to be heard regarding the possibility of an enhanced sentence."  *United States

v. Layne*, 192 F.3d 556, 576 (6th Cir. 1999).

The Fifth Circuit's opinion in *United States v. Steen*, 55 F.3d 1022 (5th Cir. 1995), is

instructive on this point.  In *Steen*, like here, the Government's § 851 notice "incorrectly stated

that one of the convictions was for delivery rather than possession of cocaine."[7]  *Id.* at 1025.  Also,

like here, the Government correctly stated "the date of conviction, the venue, and the cause number

of the case."[8]  *Id.* at 1028.  The Fifth Circuit noted that the misidentified conviction "negates the

notice provided by the other listed data only if the discrepancy misled Steen to his prejudice."  *Id.*

In concluding that *Steen* was not misled, the Fifth Circuit cited record evidence showing that

---

[7] Unlike here, the Government also "misstated the number of the court in which Steen had previously been convicted."  *Steen*, 55 F.3d at 1025.

[8] Jolly has raised no challenge to any of the other information provided in the § 851 notice.

"Steen himself admitted that he had notice of the prior convictions before trial, and that the incorrect description of the second conviction did not mislead him." *Id.* The same holds true here—while Jolly asserts in his § 2255 motion that the filing of the § 851 notice "confused" him, he states that he told his attorney that he "believed that he had pled guilty to another charge and *not to Complicity to Traffic a Controlled Substance*." (R. 114, Page ID 379) (emphasis added). And while he argues that *counsel* misled him into accepting the § 851 notice by telling him that the Government would not make such an error, this is a separate issue from whether the *Government* misled him about his state conviction.[9] Accordingly, because the Government did not mislead Jolly, it did not violate the notice requirement of § 851, and the Court thus had authority to enhance his sentence.

Alternatively, even if the Government failed to comply with § 851, Jolly's claim fails on the merits for another reason—he suffered no "substantial and injurious effect or influence on the proceedings" as required to prevail on a claim that he was denied his constitutional right to due process. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). More specifically, Jolly cannot show that the § 851 notice, if invalid, led to a sentencing enhancement he otherwise would not have received. *Gaitor v. United States*, No. 2:11-CR-35, 2018 WL 2398977, at *9 (E.D. Tenn. May 24, 2018) (denying § 2255 relief where § 851 enhancement did not ultimately impact federal prisoner's sentence).

On this point, the Government argues that "[e]ven assuming Jolly was convicted of possession of a controlled substance, the conviction would still qualify as a felony drug offense."

---

[9] "After that conversation, I never brought the issue up again, believing he was the lawyer and he probably knew best, and that I could be mistaken. I have come to realize since that I was not mistaken and Mr. Stephens had given me some bad advice." (R. 114, Page ID 449). The Court addresses the ineffective-assistance claim *infra*.

(R. 127, Page ID 490).  This is correct.  For purposes of § 841(b)(1)(B), the statutory provision under which Jolly's sentence was enhanced for having "a prior conviction for a felony drug offense," the Supreme Court has determined that 21 U.S.C. § 802(44) provides "the exclusive definition of 'felony drug offense.'"  *Burgess v. United States*, 553 U.S. 124, 133 (2008). Section 802(44) defines a "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."

Here, Jolly's conviction for possession of cocaine would fall under Kentucky Revised Statute (KRS) § 218A.1415(1).  *See Stewart v. Commonwealth*, 306 S.W.3d 502, 505 (Ky. 2010) ("[Defendant] was also convicted of possession of cocaine pursuant to KRS 218A.1415(1).").  Assuming this was his first such offense, Jolly was subject to a "maximum term of incarceration [of] no greater than three (3) years" under KRS § 218A.1415(2)(a).  That the maximum term here was *punishable* by more than one year is all that matters.  *Lockett*, 359 F. App'x at 602 ("The use of the word 'punishable' rather than 'punished' makes clear that 'it is not the actual punishment imposed but that which the statute authorizes which determines whether a crime is a felony or a misdemeanor.'") (quoting *United States v. Jemison*, 310 F. App'x 866, 880 (6th Cir. 2009)).  Accordingly, as the Sixth Circuit has concluded, the possession conviction here qualifies as a "felony drug offense."  *United States v. Snow*, 634 F. App'x 569, 573 (6th Cir. 2016) ("At all relevant times, however, Lewis's conviction was punishable by more than a year in prison. *See* Ky. Rev. Stat. §§ 218A.1415 (2007), 218A.1415 (2011), 532.060.  His 2007 conviction therefore can be used to trigger an enhanced penalty here."); *see United States v. Brummett*, No. 6:07-cr-103-DCR, 2013 WL 5798013, at *45 (E.D. Ky. Oct. 28, 2013) ("His underlying offense was

possession of a controlled substance in the first degree which carries with it a maximum term of three years of incarceration under Kentucky law. KRS § 218A.1415. Kentucky classifies an offense with a maximum term of three years of incarceration as a Class D felony. KRS § 532.020. Thus, Defendant was convicted of a felony drug offense as defined under federal law. *See* 21 U.S.C. § 802(44).").

Jolly objects to this conclusion. Citing *Lopez v. Gonzales*, 549 U.S. 51 (2006), and its progeny *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), and *Moncrieffe v. Holder*, 569 U.S. 184 (2013), he argues that "[a] conviction for simple possession of a controlled substance is not a [felony drug offense]." (R. 114, Page ID 386). *Lopez* addressed the Immigration and Nationality Act (INA), specifically considering what constituted an "aggravated felony" for purposes of that Act. 549 U.S. at 51-52. The Court held that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *Id.* at 60. In *Carachuri-Rosendo*, the Court expanded on *Lopez*, concluding that "[t]he mere possibility that the defendant's conduct, coupled with facts outside of the record of conviction, could have authorized a felony conviction under federal law is insufficient to satisfy the statutory command that a noncitizen be 'convicted of a[n] aggravated felony.'" 560 U.S. at 582. In *Moncrieffe*, the Court addressed whether a "state criminal statute that extends to the social sharing of a small amount of marijuana" counted as an "illicit drug trafficking offense[]" so as to qualify as an "aggravated felony" under the INA. 569 U.S. at 187. In holding that it does not, the Court noted that its application of the "categorical approach," which involves comparing a state offense to an offense listed in the INA, instructed that the small sharing of marijuana does not fit into the common understanding of trafficking. *Id.* at 190-92, 206.

Jolly fails to convince that these cases mean that his state possession offense does not qualify as a "felony drug offense." This is because *Lopez*, *Carachuri-Rosendo*, and *Moncrieffe* dealt with the INA and the reasoning of these cases does not apply to the definition of "felony drug offense" under § 841. *See United States v. Gallegos*, 553 F. App'x 527, 532 (6th Cir. 2014) (concluding that *Moncrieffe* was inapposite to the definition of "felony drug offense");[10] *United States v. Soto*, 8 F. App'x 535, 541 (6th Cir. 2001) ("[T]his court does not employ a categorical approach to determining whether a prior conviction constitutes a 'felony drug offense' for purposes of section 841(b)(1)."); *Bargo v. Kizziah*, No. 6:19-CV-082-CHB, 2019 WL 1560885, at *2 (E.D. Ky. Apr. 10, 2019) (concluding that categorical approach does not apply to § 841(b)(1)); *Gaither v. United States*, No. 4:07-CR-00208-TLW, 2017 WL 1196799, at *2 (D.S.C. Mar. 31, 2017) ("Furthermore, because Gaither could have received more than one year in prison for each of his prior South Carolina drug convictions, they each qualify as convictions for 'felony drug offense[s]' under § 802(44), and thus, *Carachuri-Rosendo* does not apply to this case."); *United States v. Wing*, No. 5:13-CR-087-JMH-HAI, 2016 WL 3676333, at *2 (E.D. Ky. July 7, 2016) ("Neither *Moncrieffe* nor *Lopez v. Gonzalez*, 549 U.S. 47 (2006), upon which he also relies, address the definition of "felony drug offense" for the purposes of 21 U.S.C. § 841 and are, thus, inapplicable."). Accordingly, Jolly's Kentucky cocaine possession conviction is a "felony drug offense" for § 841 purposes. *See Snow*, 634 F. App'x at 573.

However, even if Jolly's conviction were not a "federal drug felony," he would face another hurdle. While he asserts that the presiding District Judge was prevented from exercising her discretion to impose a lower sentence because of his ten-year-mandatory minimum, he has offered

---

[10] Notably, Jolly recognizes that the Sixth Circuit has declined to apply the categorical approach to § 841(b)(1) but argues that it "is incorrect, and an En Banc consideration should be issue[d] by the Sixth Circuit." (R. 133, Page ID 543).

no argument to show that the presiding District Judge would have sentenced him lower.  (*See* R. 114, Page ID 379).  Further, the record indicates otherwise.  Jolly's applicable range under the Sentencing Guidelines was 151 to 181 months.  (R. 112, Page ID 321).  By sentencing Jolly to 120 months on his § 841 conviction, the presiding District Judge actually varied downward from the Sentencing Guidelines, concluding that such a sentence was "sufficient but not greater than necessary."  (R. 112, Page ID 337, 340).  Without any indication that the presiding District Judge would have varied even lower had she not been bound by the statutory minimum, Jolly cannot demonstrate that a sentence without the enhancement would have been more favorable to him.

> **B.**    **Jolly's Ineffective-Assistance Claim Regarding his Enhanced Sentence is Meritless**

Jolly next argues that his counsel was ineffective for failing to investigate the Government's § 851 notice and argue that his prior conviction was not a "felony drug offense." (R. 114, Page ID 383).  Although this is essentially an ineffective-assistance claim tacked on to his first claim, the analytical framework is different.

To successfully assert an ineffective-assistance-of-counsel claim, a defendant must prove both deficient performance and prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.  A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances."  *Id*. at 688.  Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*. at 689.  Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the

14

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

In the first part of this claim, Jolly faults his attorney for allegedly convincing him that the Government did not misidentify his state possession conviction and for failing to retrieve the actual state court judgment which would have settled the question. (R. 114, Page ID 379-81). The second part of this claim argues that his attorney, having failed to ensure he was noticed of the right conviction, also failed to challenge whether his conviction for cocaine possession was a "felony drug offense." (*Id.* at 383). The Court finds it unnecessary to address any factual questions concerning what transpired between Jolly and his attorney with regard to the § 851 because, even assuming that counsel was deficient in some regard, Jolly cannot show prejudice. As noted in discussing Jolly's first claim, Jolly cannot show that he would have received a lesser sentence because his cocaine-possession conviction otherwise qualifies as a "felony drug offense" and there

is no indication that the presiding District Judge would have further departed from the Sentencing Guidelines to sentence him below 120 months.

### C. Jolly's Ineffective-Assistance Claim Regarding Prior State-Court Counsel's Alleged Conflict of Interest is Meritless

Jolly's final claim alleges a conspiracy different from the one for which he was convicted. He states that his criminal conduct here initially led to charges in Kentucky state court. (R. 114, Page ID 406). An attorney named Robert Boyd represented him in that case, but those representation fees were paid by a third party.[11] (*Id.* at 407). Jolly indicates that this third party was his source for drugs and alleges that Boyd acted as a "covert agent" of the third party, essentially providing bad legal advice to derail his chances for success in his criminal case. (*Id.* at 408). The state case was eventually dismissed, and Jolly was federally indicted. (*Id.* at 409). Jolly alleges that Boyd passed on privileged information to the third party, whom Boyd represented on federal charges, which information was used to obtain a deal with the Government. (*Id.* at 412-13). Jolly alleges three errors from these allegations:

> (1) The conflict of interest created by Robert Boyd's prior representation of Petitioner; (2) By the Government taking advantage of Boyd's representation of Petitioner to deliberately elicit incriminating statements from Petitioner through Boyd and his accomplice, [the third party]; and (3) Lastly, due to the fact, Petitioner brought this important matter to [his federal trial attorney's] attention once Petitioner read [the third party's] proffer to the Government, and Petitioner's attorney, [], never brought this matter to the District Court's attention.

(*Id.* at 432).

The Government correctly points out that all of these arguments essentially relate to the alleged misdeeds of Boyd in state court, which cannot form the basis for § 2255 relief. (R. 127,

---

[11] This third party is the subject of Jolly's motion to seal. While the Court finds that motion is not well-taken, it is not necessary to identify this third party by name for purposes of this Report and Recommendation.

Page ID 496).  Although Jolly alleges that the Government's response is a misdirection because he alleged *his federal counsel was ineffective*, it is Jolly who misunderstands.  (R. 133, Page ID 544).  As Jolly admits, his state case was dismissed before he was federally indicted.  (R. 114, Page ID 409).  This is important because "the Sixth Amendment right to counsel attaches only 'at or *after* the initiation of judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  *Turner v. United States*, 885 F.3d 949, 951 (6th Cir. 2018) (quoting *United States v. Moody*, 206 F.3d 609, 614 (6th Cir. 2000)) (emphasis added).  And, to the extent that Jolly would later argue it, a state prosecution does not trigger the right to federal counsel based on future federal charges.  *Id.* at 954-55.  Accordingly, because Jolly had no right to counsel, he has no conflict-of-interest claim as to Boyd.  *Id.* at 955.  Moreover, his arguments against the Government and federal trial counsel likewise fail.

While in limited circumstances a district court can redress a state court denial of the right to counsel, such as where "a  federal prosecutor[] [becomes entangled] with the state plea process," Jolly has provided no information showing that the Government was involved in Boyd's alleged misdeeds nor has he pointed to any case law showing the Government's alleged benefit from such would be grounds for § 2255 relief.  *See United States v. Morris,* 470 F.3d 596, 601 (6th Cir. 2006); *Johnson v. United States*, No. 1:11-CR-49, 2015 WL 6040306, at *3 (W.D. Mich. Oct. 15, 2015) ("Because the federal government was not involved in the state court plea negotiations, Movant's first claim of ineffective assistance of counsel fails as a matter of law.").  Accordingly, as Jolly had no right to effective assistance from Boyd in this federal case, nor did he show any improper Government entanglement with Boyd, his federal counsel cannot be ineffective for failing to raise these points to the presiding District Judge.

### D.     Jolly's Motion to Seal

Jolly moves to seal certain portions of the § 2255 briefing, asserting that his family's safety is at stake.  (R. 122; R. 123).  He fails to explain further but points to two affidavits attached to his § 2255 motion.   The first is Jolly's own affidavit, which, as discussed above, asserts that a third party conspired with Boyd to derail his legal defense.  (*See* R. 114, Page ID 447).  Jolly states that the third party began to phone his father about some money that Jolly allegedly owed the third party, stating that Jolly owed "some very dangerous people some money, and if my father did not come up with some money or items of great value then something would happen to him (my father) and his family."  (*Id.*) The second affidavit, that of Jolly's father, provides a less threatening version of what allegedly happened:

> Thereafter, the man began to tell me that my son owed him and some very dangerous people some money and they wanted their money.  I had no way of establishing whether or not what this man was claiming was true.  Plus, the manner in which this man was speaking with me made me fe[e]l very uncomfortable.  I stated to him that I would need to speak with my son first before giving him anything. . . . And as time passed, his mannerism became more and more hostile; some of the phone conversations were late at night.

> Eventually, I went, to my son's storage unit and retrieved some pistols and I met with [the third party] in Louisville, Kentucky and gave [him] the pistols and $12,000 cash.

(R. 114, Page ID 451).

There is a "strong presumption" in favor of access to judicial records that only "the most compelling reasons" can overcome.  *Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 836 (6th Cir. 2017) (citations omitted).  Here, Jolly's allegations that his family's safety is at stake does not overcome the strong presumption because there is not strong evidence of an actual threat.  While Jolly indicated that there was a threat that "something would happen" to his family, the affidavit of his father does not reveal that such an implicit threat was even made.  Second, after Jolly's

father gave the third party the pistols and cash, he does not indicate that he ever heard from the third party again.   Accordingly, the Court denies Jolly's motion to seal portions of these proceedings.  (R. 123).

###### E.   Evidentiary Hearing

Jolly requests an evidentiary hearing on his claims. (R. 114, Page ID 434). However, an evidentiary hearing is not necessary in this case because there are no material issues of fact in dispute and the record conclusively shows that he is not entitled to any relief under 28 U.S.C. § 2255. *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) ("[T]he court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").   Accordingly, no evidentiary hearing is required, and Jolly's request for one should therefore be denied.

## III.   CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255).   Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Id.* at 484.   When a district court denies a habeas petition on procedural

grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of Jolly's § 2255 motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, it also will be recommended that a certificate of appealability be denied upon the District Judge's entry of a final order in this matter.

## IV.    CONCLUSION, ORDER and RECOMMENDATIONS

For the reasons stated above,

**IT IS ORDERED** that Jolly's Motion to Permanently Seal Certain Portions of Jolly's 2255 Motion, Exhibits & Affidavits (R. 123) is **denied** as is his Motion to Seal Motion to Permanently Seal Certain Portions of Jolly's 2255 Motion, Exhibits & Affidavits (R. 122). Both filings **shall be unsealed**.

In addition, **IT IS RECOMMENDED** that:

1)      Jolly's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 114), including his request for an evidentiary hearing, **be denied;**

2)      a Certificate of Appealability **be denied** in conjunction with the District Judge's entry of a final order in this matter;

3)      Judgment in favor of the United States **be entered** contemporaneously with the entry of a final order; and,

4)      Jolly's collateral proceeding **be dismissed and stricken** from the active docket.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 31st day of August, 2020.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

J:\DATA\habeas petitions\2255 IAC\17-27-CHB Jolly R&R final.docx